IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

FERNANDO TARTT,          )
AIS #237638,            )
                        )
     Plaintiff,        )
                        )
     v.               )     CIVIL ACTION 2:19-CV-00169-MHT-SRW
                        )
LT. WALTER POSEY, et al.,   )
                        )
     Defendants.     )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

Plaintiff Fernando Tartt, an inmate incarcerated at the Bibb Correctional Facility in Brent, Alabama, filed pro se this civil rights action under 42 U.S.C. § 1983 alleging certain violations of his federally protected rights while incarcerated in the Elmore Correction Facility ("ECF") in Elmore, Alabama.  Docs. 1, 39.[1]  Plaintiff brings suit against defendants Lieutenant Walter Posey ("Posey") and Warden Joseph Headley ("Headley"). Docs. 1, 39.[2]  For relief, Plaintiff seeks: (1) to be removed from ECF, (2) monetary damages, (3) expungement of two allegedly false disciplinaries from his prison record, and (4) a declaratory judgment stating that Defendants violated his constitutional rights.  *See* Doc. 1 at 4, Doc. 22 at 4, Doc. 39 at 3, Doc. 61 at 9.

Pursuant to the Court's orders, Defendants Posey and Headley filed answers, special reports, a supplemental special report, and supporting evidentiary material addressing Plaintiff's claims for relief. Doc. 17, 49, 58, 63. The Court informed Plaintiff that Defendants' special reports,

---

[1] Plaintiff commenced this civil action on March 8, 2019.  Doc. 1.  On June 10, 2020, Plaintiff filed a "motion for leave to file amended complaint," (Doc. 39), which the Court granted.  Doc. 40.  In the interest of justice, the Court construes Plaintiff's amended complaint at Doc. 39 to supplement and add to the claims asserted in his original complaint, rather than to supersede his original complaint.

[2] As of July 20, 2020, Defendant Posey was employed by the Alabama Department of Corrections ("ADOC") at ECF, and Defendant Headley was employed by the ADOC as a Correctional Warden at Staton Correctional Facility.  Doc. 58.  At 1.

as supplemented, may, at any time, be treated as a motion for summary judgment, and explained to Plaintiff the proper manner to respond to a motion for summary judgment. Doc. 20, 64. Plaintiff filed responses to Defendants' special reports. Docs. 22, 62, 66. This case is now pending on Defendants' motion for summary judgment. Docs. 17, 58.[3] Upon consideration of the motion, the evidentiary materials filed in support thereof, and Plaintiff's opposition, the Court concludes that Defendants' motion for summary judgment is due to be GRANTED in part and DENIED in part.

## I.   Standard

To survive the properly supported motion for summary judgment submitted by Defendants, Plaintiff must produce some evidence supporting his constitutional claims. *See Celotex v. Catrett*, 477 U.S. 317, 322 (1986). He must "go beyond the pleadings and . . . designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. A plaintiff's conclusory allegations do not provide sufficient evidence to oppose a motion for summary judgment. *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984). Consequently, when a plaintiff fails to make a showing sufficient to establish the existence of an element essential to his case, and on which he will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322; *Barnes v. Southwest Forest Indus. Inc.*, 814 F.2d 607 (11th Cir. 1987). Where all the evidentiary materials before the court indicate that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, the entry of summary judgment is proper. *Celotex*, 477 U.S. at 322; *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987).

Although factual inferences must be viewed in a light most favorable to the non-moving

---

[3] Plaintiff's original complaint solely brings suit against Defendant Posey. Doc. 1. Defendant Posey's answer and special report at Doc. 17 address Plaintiff's excessive force allegations asserted against him in Doc. 1. *See* Doc. 17. Plaintiff's amended complaint incorporates the argument asserted in his original complaint and raises new claims and allegations against Defendants Posey and Headley. Doc. 39. Defendants Posey and Headley submitted an answer and special report to address Plaintiff's new allegations. Doc. 58. The second answer and report submitted by Defendant Posey references and incorporates his initial answer and special report. *See id.* at 2 n. 1.

party and pro se complaints are entitled to liberal interpretation by the courts, a pro se litigant does not escape the burden of establishing a genuine issue of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). "The leniency the Court must apply does not mean the normal summary judgment standard is discarded; nor can the Court accept factual averments completely unsupported by the record." *Jones v. Wal-Mart Assocs., Inc*., No. 1:19-CV-03705-SDG, 2021 WL 243285, at *2 (N.D. Ga. Jan. 25, 2021) (citing *Nawab v. Unifund CCR Partners*, 553 F. App'x 856, 860 (11th Cir. 2013) ("Although a *pro se* complaint is entitled to a less strict interpretation, a *pro se* plaintiff is not excused from meeting the essential burden of establishing that there is a genuine issue as to a fact material to his case. When a nonmoving party's response consists of nothing more than conclusory allegations, summary judgment is not only proper but required.") (citation and punctuation omitted in original); *Nalls v. Coleman Low Fed. Inst.*, 307 F. App'x 296, 298 (11th Cir. 2009) ("[A] *pro se* litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment.").

In this case, while Plaintiff has not established that there is a genuine issue as to a material fact to preclude summary judgment on his claims of retaliation and due process violations, he has established that there is a genuine issue as to a material fact to preclude summary judgment on his claims of excessive force.

## II.   Factual Background

Plaintiff commenced this pro se action for alleged violations of his federally protected rights while he was confined at ECF. Doc. 1. Plaintiff asserts that Defendant Posey assaulted him on February 27, 2019, during an "institutional shakedown" (Doc. 1 at 2-3, Doc. 1-1 at 1, Doc. 39 at 2) and subsequently caused Plaintiff to be wrongfully found guilty of two major disciplinaries in retaliation for Plaintiff's report of the assault and his threatening suit. *See* Doc. 61. Plaintiff

further contends that, while he submitted grievances relating to the disciplinaries, Defendant Headley sustained the alleged false accusations made by Defendant Posey. Doc. 39 at 2. Plaintiff claims violations of his due process rights and maintains that he was subjected to excessive force and retaliation. Docs. 1, 39, 61.

Plaintiff's claims stem from the following facts, viewed in the light most favorable to Plaintiff:

On February 27, 2019, following an incident that occurred at approximately 7:00 a.m. at ECF, an incident report was submitted relating to Defendant Posey's use of force against Plaintiff. Doc. 66-1 at 2; Doc. 49-1 at 2. According to the narrative summary:

> On February 27, [2019][4] Correctional Sergeant LaTreshia Hudson was assigned as the shift supervisor. At approximately 9:00 am, [Plaintiff] entered the Shift Office and stated to Sergeant Hudson, I fear for my life, [Defendant] Posey just pushed my head against the wall, while he was doing the search in A2 dormitory. Photographs were taken of [Plaintiff]. [Plaintiff] completed a written statement and Correctional Officer Jacobe Johnson escorted him to the back gate for transport to Staton Medical Unit for a medical assessment. At approximately 9:02 am, Sergeant Hudson reported this incident to Correctional Captain Charmelle Luckie. [Plaintiff] was assessed and returned to Elmore population. No disciplinary action pending at this time.

Doc. 49-1 at 2. As noted in the summary narrative, photographs were taken of Plaintiff after the alleged use of force (*see id*. at 6-8) and Plaintiff submitted the following written statement:

> On 2-27-19 at, or between the hours of 7:00 or 8:00 a.m. I was physically assaulted by [Defendant Posey] in the presence of Sgt, Lt's, and Cpt's. I was told to face the wall like a bitch and if I moved, he would make me call my 'Mammy' like the white guy did who was recently assaulted at the Back Gate. I told him he was [tough] because he was in the presence of other officers. Then I was choked he slammed my face into the wall yelling 'I'm da realest nigga here.' Next Officer Murphy escorted me to the Back Gate holding cell where I was later served (2) write ups to cover up [Defendant] Posey's misconduct. This happened beside my assigned bed A2-56B which is in the back of A-2 and in between two ceiling cameras.

*Id*. at 9. After the use of force, a body chart was performed for which Plaintiff was quoted as

---

[4] While the exhibit indicates that 2018 is the applicable year, it is clear from the document that this is an error and that the correct year is 2019. *See* Doc. 49-1 at 2.

saying, "I got assaulted by an officer." *Id*. at 10.  According to the report, Plaintiff complained of

pain below his right eye, Plaintiff was "alert and oriented," and there were "no injuries noted to

face, scalp, Abd or Ble, or back." *Id*.

> A subsequent investigation of the use of force resulted in the following investigative report:

> Investigating Officer finds on February 27, [2019][5] Correctional Sergeant LaTreshia Hudson was assigned as the shift supervisor. At approximately 9:00 am, [Plaintiff] did enter the Shift Office and reported, I fear for my life, [Defendant] Posey just pushed my head against the wall, while he was doing the search in A2 dormitory. While questioning [Plaintiff], he advised that a verbal altercation between he and [Defendant Posey] started the altercation. According to [Plaintiff], he did say a few insubordinate statements to [Defendant] Posey that may have initiated the altercation. According to [Plaintiff,] Officer Murphy witnessed the incident. Capt. McKee questioned Officer Murphy and he advised that [Plaintiff] and [Defendant] Posey did have a verbal exchange but [Defendant] Posey did not apply unnecessary force to [Plaintiff]. According to Officer Murphy, [Defendant] Posey only placed [Plaintiff] on the wall, to be restrained due to his loud behavior. Investigating Officer questioned other inmates assigned to the Dorm. Some inmates questioned supported [Plaintiff's] version of events, while others supported [Defendant] Posey or refused to give a verbal or written statement. Inmates questioned refused to complete a written statement. a REVIEW OF [Plaintiff's] medical assessment revealed no injuries consistent with the use of force reported by [Plaintiff]
> . . . .
> Investigating Officer was not able to obtain any information to substantiate [Plaintiff's] allegations.

*Id*. at 4.

Also on February 27, two disciplinary reports submitted by Defendant Posey claim that

Plaintiff's actions violated Rule 517, "Insubordination" (Doc. 58-1 at 2), and Rule 519, "Delaying,

hindering, or interfering with an employee in performance of his/her duty." Doc. 58-2 at 2.

Regarding the insubordination charge, the report states that Plaintiff told Defendant Posey "that

he was real tough when he got his niggers around (meaning officers)."  Doc. 58-1 at 2.  As to the

second charge, the report asserts that, during the institutional search, Plaintiff "had to be placed in

---

[5]  While the exhibit notes 2018 as the applicable year, it is clear from the document that this is an error and that the correct year is 2019.  *See* Doc. 49-1 at 4.

handcuffs during an institutional search of A2-dorm.  Delaying the staff from perform[ing] their duties properly."  Doc. 58-2 at 2.

That same day, after being served both disciplinary reports, Plaintiff refused to sign the reports and did not request that witnesses be present at his future hearings.  Doc. 58-1 at 3; *see also* Doc. 58-2 at 3. Both reports indicate that Plaintiff was referred for mental health competency prior to his hearings, but that Plaintiff ultimately was deemed competent to participate in the hearings.  Doc. 58-1 at 5; *see also* Doc. 58-2 at 5.

On March 5, 2019, hearings were held on both alleged rule violations, during which Plaintiff pleaded not guilty.  Doc. 58-1 at 6; *see also* Doc. 58-2 at 6.  Relating to the insubordination violation, no witnesses were called, Plaintiff provided a written statement and questions for Defendant Posey and, when asked whether he told Defendant Posey that "he was real [tough] with his niggers around," Plaintiff responded, "To be honest I said some wrost [sic] then [sic] that." Doc. 58-1 at 6-7.  Pursuant to Plaintiff's written statement:

> On 2-27-19 between the hours of 7:00 and 8:00 am, [Plaintiff] was approached by [Defendant Posey], after I and my Bunkmate had already been completely shookdown [sic] by SGT Hall.  I stated this to [Defendant Posey] and he became offended and ordered me to get down off my bed. I did, and [immediately] afterward he snatched my skullcap off my head and threw it on the floor, then proceeded to walk off.  I reached down and picked it up and threw it onto my bed. [Defendant Posey] became angry that I had picked it up and began to use some negative language like calling me a 'bitch,' talking about making me call my decease[d] 'Mammy,' and that he was a real nigga. After we both [exchanged] some words I was forced up against the wall beside my bed and told not to [move], if so some bad things would happened [sic]. I did, and also said 'he was tough in the presence of other officers.' Next I was assaulted by [Defendant Posey] who twisted my arm. Lastly, he chocked [sic] me with his left hand and smashed my face into the wall with his right.

Doc. 58-1 at 11.  Ultimately, based upon Defendant Posey's testimony and Plaintiff's admission that he said something worse to Defendant Posey, the hearing officer found Plaintiff guilty of insubordination and recommended the following sanctions: lost canteen, telephone, and visiting privileges, all for 30 days.  *Id*. at 17.  Plaintiff received a copy of the completed insubordination

disciplinary report on March 6, 2019.  *Id*. at 20.

As to the March 5 hearing relating to Plaintiff's alleged delaying, hindering, or interfering with an employee, no witnesses were called, and Plaintiff again submitted a written statement and questions for Defendant Posey.  Doc. 58-2 at 6-7.  Plaintiff's live testimony consisted of answers to two questions.  *Id*. at 6.  The first question asked Plaintiff why the officers escorted him to the back gate, to which Plaintiff responded,  "[b]ecause they was beating on me in the dorm and Officer Murphy had to stop them."  *Id*.  The second question asked Plaintiff what he was "doing or saying for them to do that," to which Plaintiff responded,  "I told him if he put his hands on me he will not dodge another case."  *Id*.  Plaintiff submitted the same written statement he submitted for his insubordination hearing.  *Id*. at 11. Based upon both Defendant Posey's and Plaintiff's testimony, the hearing officer found Plaintiff guilty and again recommended lost canteen, telephone, and visiting privileges, all for 30 days. *Id*. at 14.[6] Plaintiff received a copy of the completed insubordination disciplinary report on March 7, 2019.  *Id*. at 17.

On November 9, 2020, Plaintiff was transferred from ECF to his current institution of confinement, Bibb Correctional Facility.  Doc. 76.

Additional facts are set forth as relevant below.

## III.   Discussion

Plaintiff asserts that, on February 27, 2019, between 7:00 a.m. to 8:00 a.m., Defendant Posey assaulted Plaintiff in front of other officers.  Doc. 1-1 at 1.  Plaintiff maintains that he was "told to face the wall like a 'bitch,'" and that if he moved, Defendant Posey would "do things to make me call my 'Mammy.'"  *Id*.  Plaintiff admits stating to Defendant Posey that he "was only tough because he had other officers with him."  *Id*.  After this statement, Plaintiff claims Defendant Posey became angry and proceeded to choke Plaintiff and smash his face into the wall, while

---

[6]  The hearing officer recommended that the 30-day sanctions imposed on both charges be run consecutively, for a total of 60 days without canteen, visiting, and telephone privileges.  Doc. 58-1 at 20, Doc. 58-2 at 14.

yelling "I'm the realest nigga in here." *Id*.  Plaintiff claims that he was subsequently served two disciplinaries to "cover-up" Defendant Posey's wrongdoing.  *Id*. Plaintiff further asserts that because Defendant Posey failed to give Plaintiff a "direct order to calm down or be quiet," his due process rights were violated when Defendant Posey subsequently submitted the two disciplinaries. Doc. 61 at 2.  In support of this argument, Plaintiff cites to ADOC policy.  *Id*.

In his amended complaint, Plaintiff adds that he was verbally abused and physically mistreated and that Defendant Posey's actions "left bruises, scrapes, and, or abrasions to either side of his face."  Doc. 39 at 3.  Plaintiff maintains that the video evidence disproves Defendant Posey's assertions that Plaintiff was being disruptive and interfering with the institutional shakedown and further argues that the pictures taken after the incident evidence injury to his face. Doc. 39 at 2; *see also* Doc. 61 at 5.  Plaintiff alleges that because he reported the assault at 9:00 a.m., Defendant Posey knew of Plaintiff's report accusing him of excessive force and that Defendant Posey retaliated against Plaintiff by drafting the two conduct violations.  Doc. 39 at 2. As to Defendant Headley, Plaintiff contends that while he "made grievances" to Defendant Headley, Defendant Headley not only failed to respond to the grievances, but also sustained the two false accusations by Defendant Posey.  *Id*. Plaintiff brings claims of due process violations against both Defendants, and excessive force and retaliation claims against Defendant Posey.  *See* Docs. 1, 39, 61.

Defendants maintain, *inter alia*, that Plaintiff's allegations fail to state a claim and that they are entitled to immunity in their individual and official capacities.  Doc. 17 at 2-3; *see also* Doc. 58 at 3. Defendants also argue, as to Plaintiff's due process claims, that while prison policy was followed in the finding of Plaintiff's guilt regarding the two disciplinaries, Plaintiff had no liberty interest under *Sandin v. Conner*, 515 U.S. 472 (1995), and therefore, he was not entitled to the protections offered by *Wolff v. McDonnell*, 418 U.S. 539 (1974) and *Superintendent, Mass. Corr.*

*Inst. v. Hill*, 474 U.S. 445 (1985).  *See generally*, Doc. 58.  Defendant Posey further contends the disciplinaries were not retaliatory, but rather were due to Plaintiff's negative behavior.  Doc. 63-2 at 1.

### A.     Absolute Immunity

The capacity in which Plaintiff brings suit against Defendants is not clear from the complaint or amended complaint. To the extent that Plaintiff seeks to sue Defendants in their official capacity, they are entitled to absolute immunity from monetary damages. Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity."  *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S. Ct. 1114, 1125 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities."  *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, it is clear that Defendants are state actors entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacity. *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994).

### B.     Injunctive Relief

Plaintiff requests injunctive relief against Defendants in the form of transfer from ECF and expungement of the two disciplinaries from his prison record.  However, Plaintiff has since been transferred to Bibb Correctional Facility.  Doc. 76.  The transfer or release of a prisoner renders

moot any claims for injunctive or declaratory relief. *See County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *see also Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) (finding past exposure to even illegal conduct does not in and of itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing present injury or real and immediate threat of repeated injury). As it is clear from the pleadings and record before the Court that Plaintiff is no longer at ECF, his request for equitable relief is moot.[7]

### C. Due Process Claim

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. In relevant part, § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

To state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

Liberally construing Plaintiff's allegations, Plaintiff claims that Defendant Posey violated his due process rights when he failed to order Plaintiff to be quiet or calm down prior to issuing the two disciplinaries. Plaintiff also asserts a due process violation against Defendant Headley because he failed to respond to Plaintiff's grievances and because he approved the allegedly false disciplinaries. Defendants deny any constitutional violation and maintain that Plaintiff was

---

[7] For the reasons set forth below, Plaintiff is also not entitled to expungement because his due process rights were not violated in connection with the two disciplinaries.

afforded due process, and, in any event, because he had no liberty interest, he was not entitled to the protections afforded under *Wolff* and *Hill*.

While Plaintiff contends that Defendants violated his Fourteenth Amendment due process rights, these claims fail because he has alleged no protected liberty interest regarding access to phone, canteen, or visiting privileges. The Fourteenth Amendment's Due Process Clause guarantees that no state shall "deprive any person of life, liberty, or property without due process of law."  U.S. Const. amend. XIV.  Thus, to succeed on a due process claim, Plaintiff must show he has an interest to which due process attaches.  *See Arrington v. Helms*, 438 F.3d 1336, 1347-48 (11th Cir. 2006) (internal quotation marks and citations omitted) (holding that "a § 1983 claim alleging a denial of procedural due process requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process."); *see generally Sandin v. Conner*, 515 U.S. 472, 484 (1995).

Here, Plaintiff's Fourteenth Amendment claim fails because he has not demonstrated that he has a protected liberty interest in 60 days of lost privileges including canteen, telephone, and visits. It is well-established that a temporary denial of privileges does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin*, 515 U.S. at 484; *see also Kentucky Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989); *Walker v. Loman*, No. 206-CV-00896-WKW, 2006 WL 3327663, at *3 (M.D. Ala. Nov. 15, 2006). Thus, the deprivations imposed upon Plaintiff did not "exceed the sentence [imposed by the trial court] in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force."  *Sandin*, 515 U.S. at 484.  This Court must therefore determine whether the actions about which Plaintiff complains involve the deprivation of a state-created liberty interest as defined by the standard set forth in *Sandin*.

As the Supreme Court explained:

*Sandin* involved prisoners' claims to procedural due process protection before placement in segregated confinement for 30 days, imposed as discipline for disruptive behavior. *Sandin* observed that some of our earlier cases, *Hewitt v. Helms*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), in particular, had employed a methodology for identifying state-created liberty interests that emphasized "the language of a particular [prison] regulation" instead of "the nature of the deprivation." *Sandin*, 515 U.S., at 481, 115 S.Ct. 2293. In *Sandin*, we criticized this methodology as creating a disincentive for States to promulgate procedures for prison management, and as involving the federal courts in the day-to-day management of prisons. *Id.*, at 482-483, 115 S.Ct. 2293. For these reasons, we abrogated the methodology of parsing the language of particular regulations.

"[T]he search for a negative implication from mandatory language in prisoner regulations has strayed from the real concerns undergirding the liberty protected by the Due Process Clause. The time has come to return to the due process principles we believe were correctly established in and applied in *Wolff* and *Meachum*. Following *Wolff*, we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.*, at 483-484, 115 S.Ct. 2293 (citations and footnote omitted).

After *Sandin*, it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves "in relation to the ordinary incidents of prison life." *Id.*, at 484, 115 S.Ct. 2293.

*Wilkinson v. Austin*, 545 U.S. 209, 222-23 (2005).

Applying *Sandin*, Plaintiff's temporary loss of canteen, telephone, and visiting privileges, "though concededly punitive, do[ ] not represent a dramatic departure from the basic conditions" of the sentence imposed upon Plaintiff. 515 U.S. at 485. Defendants are entitled to summary judgment on Plaintiff's due process claims as he has not demonstrated infringement of any constitutional right regarding the challenged conduct.

### D.    Qualified Immunity

In response to Plaintiff's remaining allegations, Defendant Posey argues that he is entitled to qualified immunity from damages in his individual capacity. Qualified immunity offers

complete protection from civil damages for government officials sued in their individual capacities if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Qualified immunity is not merely a defense against liability but immunity from suit, and the Supreme Court "repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009) (quotation marks and citation omitted). To receive qualified immunity, the public official must first prove he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.  *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).  Based upon the record, there is no dispute that Defendant Posey was acting within the course and scope of his discretionary authority when the conduct about which Plaintiff complains occurred.  Plaintiff must, therefore, allege facts that, when read in a light most favorable to him, show Defendant Posey is not entitled to qualified immunity.  *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).

To meet his burden, Plaintiff must show two things: (1) that a defendant committed a constitutional violation and (2) that the constitutional right a defendant violated was "clearly established." *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir. 2004).  "To be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right. . . . In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (citations and quotation marks omitted) (alteration in original). "Clearly established law" means (1) "a materially similar case has already been decided"; (2) "a broader, clearly established principle that should control the novel facts of the situation"; or (3) "the conduct

involved in the case may so obviously violate the constitution that prior case law is unnecessary." *Gaines v. Wardynsk*i, 871 F.3d 1203, 1208–09 (11th Cir. 2017) (citations omitted).

The controlling authority is from "the Supreme Court of the United States, the Eleventh Circuit, or the highest court in the relevant state." *Id.* at 1209. "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (citations and quotation marks omitted). The Eleventh Circuit "has stated many times that if case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Gaines*, 871 F.3d at 1210 (citations and quotation marks omitted). "Exact factual identity with the previously decided case is not required, but the unlawfulness of the conduct must be apparent from pre-existing law." *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011) (citation omitted). If a plaintiff cannot establish both elements to satisfy his burden, the defendants are entitled to qualified immunity, and the court may analyze the elements "in whatever order is deemed most appropriate for the case." *Rehberg v. Paulk*, 611 F.3d 828, 839 (11th Cir. 2010) (*citing Pearson*, 555 U.S. at 241-42).

*1.     Retaliation Claim*

Plaintiff asserts that Defendant Posey wrote two disciplinaries against Plaintiff in retaliation for Plaintiff's reporting the alleged assault and threatening suit. In support of his argument, Plaintiff maintains that, at approximately 9:00 a.m., he reported the assault, and after his report Defendant Posey submitted the disciplinaries. In further support of his retaliation argument, Plaintiff maintains that during the February 27 incident, he told Defendant Posey, "if he puts his hands on me he will not dodge another case." *See* Doc. 66-1 at 2.

Defendant Posey, however, avers that he knew nothing of any lawsuit and that the disciplinaries were due to Plaintiff's negative behavior.

A claim that a plaintiff was penalized for exercising a constitutional right is properly considered under the First Amendment. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 387 (6th Cir. 1999) (*en banc*). The First Amendment protects inmates from retaliation by prison officials for filing administrative grievances and lawsuits. *Wright v. Newsome*, 795 F.2d 964 (11th Cir. 1986); *Farrow v West*, 320 F.3d 1235, 1248 (11th Cir. 2003). "The gist of a retaliation claim is that a prisoner is penalized for exercising a right of free speech." *Thomas v. Evans*, 880 F.2d 1235, 1242 (11th Cir. 1989). Conclusory allegations of retaliation, however, cannot demonstrate the existence of each element requisite to establishing retaliation. *Sinaltrainal v. Coca-Cola Co*., 578 F.3d 1252, 1266 (11th Cir. 2009), *overruled on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449 (2012), (stating that "in testing the sufficiency of the plaintiff's allegations, we do not credit . . . conclusory allegations as true"); *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 003) (explaining that because prisoner retaliation claims are prone to abuse, "we are careful to require non-conclusory allegations.").

In ruling on an inmate's First Amendment retaliation claim, courts use a burden shifting analysis. *Moton*, 631 F.3d at 1341-42. Plaintiff must establish three elements: "(1) 'his speech or act was constitutionally protected'; (2) 'the defendant's retaliatory conduct adversely affected the protected speech'; and (3) 'there is a causal connection between the retaliatory actions and the adverse effect on speech.'" *Id*. at 1341 (quoting *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005)); *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008); *Thaddeus-X*, 175 F.3d at 397. Regarding the causation prong a court "asks whether the defendants were subjectively motivated" by the plaintiff's protected act. *Smith*, 532 F.3d at 1278. If the plaintiff shows that "his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant." *Moton*, 631 F.3d at 1341-42 (quoting *Smith*, 532 F.3d at 1278).

Upon production of evidence demonstrating a legitimate reason for the conduct or actions in question, the plaintiff, with the ultimate burden of proof, must show there is a genuine dispute of material fact concerning the defendant's defense. *See Osterback v. Kemp*, 300 F.Supp.2d 1238, 1254 (N.D. Fla. 2003). Federal courts must "carefully scrutinize" retaliation claims brought by prisoners challenging adverse actions of correctional personnel, *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995), and "approach prisoner claims of retaliation with skepticism and particular care. *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983). This is [necessary because prisoners'] . . . claims of retaliation are . . . easily fabricated [and] pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration. This is so because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized [by the prisoner] as a constitutionally proscribed retaliatory act." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds, Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

Finally, an inmate's claim that a false disciplinary charge was initiated against him does not itself violate a prisoner's constitutional rights. *See Freeman v. Rideout*, 808 F.2d 949, 952-53 (2d Cir.1986) (holding that "the mere filing of [a false] charge itself" does not constitute a cognizable claim under § 1983 so long as the inmate "was granted a hearing, and had the opportunity to rebut the unfounded or false charges"); *Hanrahan v. Lane*, 747 F.2d 1137, 1140 (7th Cir.1984) (finding that so long as prison officials provide a prisoner with the procedural requirements outlined in *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974), then the prisoner has not suffered a constitutional violation).

Plaintiff challenges two disciplinaries submitted by Defendant Posey on February 27, 2019, for insubordination and interference with the institutional search. As noted *supra*, Plaintiff asserts that Defendant Posey filed the disciplinaries in retaliation for Plaintiff's threatening suit and

reporting the alleged assault.  Defendant Posey maintains that he had no knowledge of any pending suit against him when he submitted the disciplinaries.

Defendant Posey's evidence includes his affidavits and other certified institutional records, including the incident report, investigative report, and disciplinary report covering the relevant time period.  *See* Docs. 49-1, 58-1, 58-2, 58-3, 58-4.  Reviewed as a whole, the evidence reflects that Defendant Posey's actions towards Plaintiff were not predicated upon a retaliatory motive, but rather upon Plaintiff's failure to conform or adhere his behavior to institutional rules governing inmate conduct. Notably, the evidence shows that Plaintiff admitted that he was insubordinate to Defendant Posey during the institutional search.  *See* Doc. 58-1 at 6.

An inmate cannot state a claim for retaliatory disciplinary proceedings where the "discipline [was] imparted for acts that a prisoner was not entitled to perform."  In *O'Bryant v. Finch*, 637 F.3d 1207 (11th Cir. 2011), the Eleventh Circuit stated:

> [W]e agree with the Eighth Circuit that a prisoner cannot maintain a retaliation claim when he is convicted of the actual behavioral violation underlying the alleged retaliatory false disciplinary report and there is evidence to sustain the conviction. *See, e.g., Hartsfield v. Nichols*, 511 F.3d 826, 829 (8th Cir.2008) (involving allegations of false disciplinary reports and concluding "claims of retaliation fail if the alleged retaliatory conduct violations were issued for the actual violation of a prison rule"); *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir.1994) (noting inmate alleged officer was lying but concluding that the finding of an actual violation of prison rules was based on some evidence of the violation and "essentially checkmates [the prisoner's] retaliation claim"); *Orebaugh v. Caspari*, 910 F.2d 526, 528 (8th Cir.1990) ("[N]o claim can be stated when the alleged retaliation arose from discipline imparted for acts that a prisoner was not entitled to perform.").

*Id.* at 1215-16. In this case, while Plaintiff had no liberty interest in the loss of privileges, the evidence shows Plaintiff nonetheless received due process during the disciplinary proceedings and there was some evidence to support the determination reached by the hearing officer.  *See Wolff*, 418 U.S. 539, and *Hill*, 472 U.S. 445.  Defendant Posey denies the allegations of retaliation made by Plaintiff and denies any awareness or involvement in the actions which serve as the basis for his claims of retaliation. To the extent Plaintiff argues that the mere fact he threatened to file a

"case" against Defendant Posey or that Defendant Posey allegedly knew Plaintiff reported the assault prior to filing the disciplinaries, he does not produce evidence beyond his own conclusory allegations, nor is his claim supported by the record. *O'Bryant*, 637 F.3d at 1215. "A prisoner does not automatically cast doubt upon an institutional decision, nor is the decision subject to exhaustive challenge, solely because he was engaged in a First Amendment right. Even though prison officials do not have the authority to prohibit inmates from filing [lawsuits,] it does not follow that every time an inmate files a [lawsuit] the act of doing so renders the exercise of prison authority suspect." *Cranford v. Hammock*, 2010 WL 916031 *8 (N.D. Fla. 2010) (internal quotation marks and citations omitted).

Even if the finding of guilt as to the disciplinary charges does not *per se* bar the retaliation claim here, Plaintiff's claim fails because he has not presented evidence of retaliatory animus on the part of Defendant Posey, and the record reflects that Defendant Posey would have taken the same disciplinary actions in the absence of Plaintiff's protected activity. *O'Bryant*, 637 F.3d at 1219 (*citing Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir.1995) (affirming summary judgment for defendant because plaintiff "produced nothing, beyond his own conclusory allegations, suggesting that defendant['s [] actions in compliance with the strip search regulations were motivated by a retaliatory animus")); *Moton*, 631 F.3d at 1341 (quotation marks omitted) (holding that "[t]o establish causation, the plaintiff must show that the defendant was subjectively motivated to discipline the plaintiff for exercising his First Amendment rights.").

Here, Plaintiff provides no facts from which the Court could infer a retaliatory motive by any defendant beyond his bare allegation that the challenged conduct occurred in retaliation for his reporting the alleged assault and threatening suit. No evidence has been presented that Defendant Posey knew of any previous litigation or that he was in any way personally affected by it. Rather, Plaintiff does nothing more than make the conclusory allegation that Defendant Posey

knew of his threat of future litigation and of reporting the assault, and that his conduct in subjecting him to disciplinary proceedings and sanctions was motivated by retaliation. This allegation is insufficient to defeat Defendant Posey's dispositive motion. *Waddell v. Valley Forge Dental Associates, Inc*., 276 F.3d 1275, 1279 (11th Cir. 2001) (holding that to establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

The record before the Court is devoid of admissible or potentially admissible evidence from which a reasonable fact finder could infer the requisite motivating factor for the alleged acts of retaliation. Also, the circumstances, when taken as a whole, do not support drawing such an inference. Because Plaintiff's allegations against Defendant Posey fail to support a First Amendment retaliation claim, Posey is entitled to qualified immunity.

2.    *Excessive Force Claim*

With respect to Plaintiff's excessive force claim against Defendant Posey in his individual capacity, Posey again argues that not only do Plaintiff's allegations fail to state a claim, but he is also entitled to qualified immunity. As noted *supra*, "[t]o defeat qualified immunity, a plaintiff must show both that a constitutional violation occurred and that the constitutional right violated was clearly established.  *Fennell [v. Gilstrap*, 559 F.3d 1212, 1216 (11th Cir. 2009) (per curiam)]. In Eighth Amendment excessive force cases, however, 'the subjective element required to establish [the constitutional violation] is so extreme that every conceivable set of circumstances in which this constitutional violation occurs is clearly established to be a violation of the Constitution.' *Johnson v. Breeden*, 280 F.3d 1308, 1321-22 (11th Cir. 2002)." *Bowden v. Stokely*, 576 Fed. App'x 951, 954-955 (11th Cir. 2014) (per curiam).  "While . . . there is no *per se* rule barring qualified immunity in Eighth Amendment cases, where the plaintiff has sufficiently alleged or shown a material dispute of fact as to an excessive force claim, summary judgment based on

qualified immunity is not appropriate.  *See Skrtich [v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002)]."  *Bowden*, 576 Fed. App'x at 956.

Accordingly, the Court will consider whether Plaintiff's allegation that Defendant Posey, after a verbal altercation between Plaintiff and Defendant Posey, and without giving Plaintiff any direct order to quiet down, choked Plaintiff and pushed him into a wall—which the Court must take as true for purposes of summary judgment—sets forth a violation of his Eighth Amendment rights.

Claims of excessive force by jail officials against convicted inmates are governed by the Eighth Amendment's proscription against cruel and unusual punishment.  *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999).  The standard applied to an Eighth Amendment excessive force claim contains both a subjective and objective component.  *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). The subjective component requires that prison "officials act[ed] with a sufficiently culpable state of mind."  *Id*. 503 U.S. at 8 (internal quotations omitted).  Regarding the objective component, a plaintiff must show that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation."  *Id*.  In addition, "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury."  *Id*. at 4.  "Injury and force ... are only imperfectly correlated, and it is the latter that ultimately counts.  An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."  *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010).  However, not "every malevolent touch by a prison guard gives rise to a federal cause of action."  *Hudson*, 503 U.S. at 9. "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not a sort 'repugnant to the conscience of mankind.'"  *Id*. at 9-10 (quoting *Whitley v. Albers*, 475 U.S.

312, 327 (1986).  The core inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or "maliciously and sadistically to cause harm."  *Wilkins*, 559 U.S. at 39 (2010) (per curiam) (citation omitted).

Whether force was applied maliciously and sadistically to cause harm requires analysis of several factors, including:  "a) the need for the application of force; b) the relationship between the need and the amount of force that was used; c) the extent of the injury inflicted upon the prisoner; d) the extent of the threat to the safety of staff and inmates; and e) any efforts made to temper the severity of a forceful response."  *Fennell v. Gilstrap*, 559 F.3d 1212, 1217 (11th Cir. 2009) (per curiam).  While a lack of serious injury is relevant to the inquiry, "[i]njury and force . . . are only imperfectly correlated and it is the latter that ultimately counts." *Wilkin*, 559 U.S. at 38*. See Nolin v. Isbell*, 207 F.3d 1253, 1257 (11th Cir. 2000) ("[T]he application of *de minimis* force, without more, will not support a claim for excessive force...."); *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973) ("The management  by a few guards of large numbers of prisoners, not usually the most gentle or tractable of men and women, may require and justify the occasional use of a degree of intentional force."); *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996) (holding application of *de minimis* force, without more, presents no claim cognizable under the Eighth Amendment).

"Prison guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding."  *Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990).  Generally, correctional officers are authorized to use force when a prisoner fails to comply with an order. "Officers are not required to convince every prisoner that their orders are reasonable and well-thought out before resorting to force."  *Pearson*, 665 F. App'x at 864 (citation omitted).

As the moving party, Defendant Posey bears the initial burden on summary judgment of "identifying those portions of 'the pleadings, ... admissions on file, together with the affidavits, ...

which [they] believe[s] demonstrate the absence of a genuine issue of material fact.'" *Celotex*, 477 U.S. at 323.  To support his motion for summary judgment, Defendant Posey has produced, *inter alia*, personal affidavits, prison incident reports, use of force investigative reports, a body chart, a video exhibit, and photographic evidence.

Based on Defendant Posey's dispositive motion and the evidentiary material filed in support of the motion, the following facts are undisputed or, if disputed, are taken in a light most favorable to Plaintiff.  On February 27, 2019, Officer Murphy, witness to the interaction between Defendant Posey and Plaintiff, submitted the following written statement:

> [A]t approximately 6:30 a.m., I heard a disturbance in the back of A2-Dorm. I saw [Defendant Posey] and [Plaintiff]…in a verbal altercation.  [Defendant Posey] gave [Plaintiff] several verbal warnings to stop talking.[8]  [Plaintiff] did not.  [Defendant Posey] then…gave a verbal command…[Plaintiff] was hesitant. [Defendant Posey] then placed both his hands on [Plaintiff's] chest area, grabbing his shirt and turn [Plaintiff] facing the wall. That's when I stepped in and handcuffed [Plaintiff], then escorted him to the back gate.

Doc. 49-1 at 12.  Defendant Posey also submitted a typed statement concerning the February 27 incident in which he asserts, "On the incident in question, I [Defendant Posey] did not push [Plaintiff's] head against the wall. I did give [Plaintiff] a verbal command to place his hands behind his back to be placed in handcuffs."  *Id*. at 13.  Defendant Posey also said, in a handwritten statement, "I do feel [Plaintiff] is retaliating due to him receiving disciplinary action."  *Id*.  In his affidavit, Defendant Posey further maintains that,

> [o]n the incident in question I, [Defendant Posey] did not assault [Plaintiff]. [Plaintiff] was being disruptive during an institutional search and was ordered by me to stop. [Plaintiff] was pat search[ed] and when he begin to not comply with the pat search I placed his left arm behind his back until he was handcuffed. No other force was used on [Plaintiff].

Doc. 17-1 at 1.

---

[8] Plaintiff denies being given any direct order to be quiet or calm down. This fact is in dispute.

Following the incident between Plaintiff and Defendant Posey, Plaintiff was brought to medical, where he told medical personnel, "I got assaulted by an officer."  Doc. 49-2 at 10. Photographs were taken of Plaintiff.  *Id*. at 6-8.  According to the inmate body chart, Plaintiff had pain below his right eye, but there were no notable injuries.  *Id*. at 10.  Plaintiff provides no further medical records indicating that he sought treatment of his injuries after this incident.  Following the incident, Plaintiff submitted a written statement in which he asserts that, after he told Defendant Posey he was acting tough only because other officers were there, Defendant Posey choked Plaintiff and slammed his face against the wall. *Id*. at 9. After an investigation and subsequent disciplinary hearings, Plaintiff was found guilty of both insubordination and delaying, interfering, or hindering an officer. *See* Docs. 58-1, 58-2. During the hearing relating to the charge of insubordination, Plaintiff admitted being verbally aggressive towards Defendant Posey prior to the use of force.  Doc. 58-1 at 6.

Even though Defendant Posey disputes the version of events presented by Plaintiff, the court is required at this stage of the proceedings to view the facts in the light most favorable to Plaintiff and draw all reasonable inferences from those facts in his favor. *Bradley v. Franklin Correctional Service, Inc*., 739 F.3d 606, 608 (11th Cir. 2014); *Anderson v. Liberty Lobby*, 477 U.S. at 255 (all justifiable inferences are to drawn in favor of the party opposing summary judgment).  Plaintiff states that Defendant Posey, following a verbal altercation between Plaintiff and Defendant Posey, choked Plaintiff and pushed him into a wall.  Plaintiff asserts that Defendant Posey failed to issue a direct order to Plaintiff to quiet down prior to using force. And, while Plaintiff maintains that the photos taken of his injuries after the incident and Defendant Posey's video exhibit[9] prove his allegations to be true, the images in both exhibits are inconclusive.

---

[9] While Defendant Posey provided a CD exhibit showing the incident on February 27, 2019, (*see* Doc. 17-4), the video is blurry, has no sound, and does not clearly show the incident between Plaintiff and Defendant Posey. *See id*. at 0:10-02:15. Rather, the exhibit shows that the incident, which occurs at the lower right corner of the video, is largely outside the camera's viewpoint.

Defendant Posey denies the use of excessive force and maintains that at no time during the incident in question did he use more force than necessary to gain control of Plaintiff.  Defendant Posey also asserts that he gave verbal commands to Plaintiff to be quiet and to place his hands on the wall. Nevertheless, viewing the facts in the light most favorable to Plaintiff, the Court concludes that Defendant Posey is not entitled to qualified immunity, as Plaintiff has alleged facts sufficient to survive Defendant Posey's motion for summary judgment regarding Plaintiff's excessive force claim.  *Skrtich*, 280 F.3d at 1301. Specifically, disputed issues of material fact exist regarding the need for the use of force by Defendant Posey, the nature of the force he used, and whether he acted "maliciously and sadistically" to cause harm.  Consequently, the motion for summary judgment regarding Plaintiff's excessive force claim against Defendant Posey in his individual capacity is due to be denied.

### IV.   Conclusion

In light of the foregoing, it is the RECOMMENDATION of the Magistrate Judge that:

1.  Defendants' motion for summary judgment (Docs. 17, 58) be GRANTED in part and DENIED in part as addressed herein.

2.  Defendants' motion for summary judgment regarding Plaintiff's claims for monetary damages lodged against Defendants in their official capacity be GRANTED and these claims be DISMISSED with prejudice as Defendants are entitled to absolute immunity from such relief.

3.  Defendants' motion for summary judgment regarding Plaintiff's claim of excessive force against Defendant Posey in his individual capacity be DENIED.

4. Defendants' motion for summary judgment regarding Plaintiff's claims of retaliation and due process violations be GRANTED.

5. Defendant Headley be DISMISSED from this case, with prejudice.

6. This case be set for a bench trial on Plaintiff's excessive force claim against Defendant Posey (Docs. 65, 67). It is further

ORDERED that **on or before December 8, 2021**, the parties may file objections. Any objections filed must specifically identify the factual findings and legal conclusions in the Magistrate Judge's Recommendation to which the parties object.  Frivolous, conclusive or general objections will not be considered by the District Court.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice.  11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE, on this the 23rd day of November, 2021.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge

25